**MOTOR INN OF PERRYSBURG, INC. d/b/a Holiday Inn of Perrysburg, Ohio, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–1388.

United States Court of Appeals, Sixth Circuit.

May 4, 1981.

---

J. Mack Swigert, Taft, Stettinius & Hollister, Cincinnati, Ohio, Harold F. Craig, Brown, Baker, Schlageter & Craig, Toledo, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Bernard Jeweler, N.L.R.B., Washington, D. C., Bernard Levine, Director, Region 8, N.L.R.B., Cleveland, Ohio, for respondent.

Before ENGEL and BOYCE F. MARTIN, Jr., Circuit Judges and MANOS, District Judge.*

## ORDER

This labor dispute is before the court upon cross-petitions for review and enforcement of the order of the National Labor

---

* Hon. John M. Manos, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

Relations Board[1] directing the petitioner Motor Inn of Perrysburg, d/b/a Holiday Inn of Perrysburg, Ohio, (Motor Inn) to bargain collectively with the Hotel and Restaurant Employees and Bartenders Union, Local 868, AFL–CIO, and to refrain from certain practices which the Board found to have been in violation of the National Labor Relations Act, § 8(a)(2), (3) and (5), 29 U.S.C. § 158(a)(2), (3) and (5) (1976).

Although the union had lost in two certification elections held in December, 1974 and September, 1975, the Board ordered the company to recognize and to bargain with the union on the authority of *NLRB v. Gissell Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, *reh. denied*, 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969). The Board found that the conduct of the company in imposing more onerous working conditions on certain of its employees had amounted to a constructive discharge of those employees because of their union activities or to discourage union support. Therefore, according to the Board, a third certification election could not be fairly conducted and the bargaining order was issued.

While other conduct of the employer also was claimed to be violative of the Act, counsel for the Board and for Motor Inn agreed that the propriety of the bargaining order had to be determined upon whether there was substantial evidence in the record as a whole to support the Board's finding that the employees were constructively discharged by the imposition of the so-called "Captain System" and "Revised Captain System." These systems changed the working conditions and method of compensation of the waiters and waitresses employed in the restaurant by Motor Inn during the time in question.

It should be noted at the outset that petitioner's motion to file the affidavit of Chip C. Dennison is denied. After an examination of the record as a whole, as it stood before the Board, however, the court concludes that substantial evidence does not support the Board's finding that the captain

systems were instituted to induce the union adherents to voluntarily terminate their employment, and thus defeat the upcoming campaign to certify the union. In making this conclusion, the court is reminded of the words of Justice Frankfurter in *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951), where he said: "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." In this respect, there was no collective bargaining agreement in effect at the time, yet the Board in its order sought to impose conditions of employment as if one had been. Although the new systems were perhaps unpopular with at least some employees, they were imposed equally upon all employees, not only those who were in sympathy with the union. This lack of discriminatory treatment of or impact upon union adherents obviously detracted from the evidence which might show Motor Inn's anti-union animus.

In addition, the record shows that the Revised Captain System continued in operation until at least early 1977, when the hearing before the Administrative Law Judge was held. If the purpose of the system was to constructively discharge employees who were sympathetic to the union, as the Administrative Law Judge and the Board found, there would be no reason for continuing the system beyond April 1, 1976, when those employees terminated their employment. To the contrary, the record contains sufficient evidence of Motor Inn's economic motivation for implementation of the captain systems to convince the court that Motor Inn's claim in this regard was not merely pretextual. Exhibit 49 shows that the system was profitable. While the total number of dinners served during 1976 declined from prior years, the price of the average check increased, due in large part to the increase in sales of desserts and appetizers. This evidence shows that the captain systems had the intended effect: to increase the sale of food. For these rea-

1. The Board's decision and order is reported at 243 NLRB No. 55 (1979).

sons, enforcement of the Board's orders in respect to implementation and retention of the captain systems is denied. Also, enforcement of the Board's order requiring Motor to offer reemployment to the employees it found to have been constructively discharged is denied.

Since substantial evidence does not support the Board's finding that the employees were constructively discharged by the imposition of the captain systems, enforcement of the bargaining order also is denied. Furthermore, the long delay between the filing of the complaint and the action of the Board in ordering the *Gissell* remedy made its imposition in this case an abuse of discretion within the meaning of *Clark's Gamble Corp. v. NLRB*, 422 F.2d 845 (6th Cir.), cert. denied, 400 U.S. 868, 91 S.Ct. 100, 27 L.Ed.2d 108 (1970).

█ Certain other findings of the Board also appear, upon our consideration, to lack supporting substantial evidence in the record. Specifically, the Board concluded that Motor Inn violated section 8(a)(1) by threatening to terminate its restaurant operation rather than bargain with the union. A review of the evidence, however, discloses that any such threat was made only to former employees. The evidence does not suggest that this threat was communicated to the former employees with the intention that it be recommunicated to then current employees. This conduct is clearly not a violation of the Act.

█ Next, the Board found that Motor Inn promulgated an overly broad no-solicitation and no-distribution rule. This action, according to the Board, violated section 8(a)(1). The Administrative Law Judge's decision itself, however, found that this rule was never enforced. Nor does the evidence even suggest that the employees were chilled in the exercise of their solicitation and distribution rights. On the contrary, the evidence shows that the employees exercised these rights freely, openly, and frequently. Under these facts, the court concludes that the mere enactment of the overly broad rules was not a violation of the Act. For this reason, enforcement of the Board's cease and desist order prohibiting Motor Inn from promulgating, maintaining, giving effect to or enforcing these overly broad rules is denied.

█ Finally, the Board found that Motor Inn's photographic surveillance of employees engaged in picketing on behalf of the union violated section 8(a)(1). There is evidence in the record suggesting that the surveillance was undertaken to support an attempt to obtain an injunction against unlawful employee picketing. The Administrative Law Judge also found that this surveillance was mainly directed against two employees whose later terminations were upheld. This evidence severely detracts from the weight of the little evidence substantiating the Board's decision on this issue. Therefore, the Board's finding in this regard will not be upheld on this appeal and enforcement of the Board's cease and desist order prohibiting Motor Inn from engaging in the surveillance of employees engaged in lawful picketing on behalf of the union is denied.

█ Two violations found by the Board were substantially conceded by Motor Inn. The first violation was the employer's threat to discharge employees who signed union registration cards. The second involved interrogation of employees regarding union activities and sympathies. There is substantial evidence on the record, as well as the concession by Motor Inn, to uphold these findings on appeal. Therefore, those parts of the Board's order requiring Motor Inn to cease and desist from interrogating employees concerning their membership, sentiment toward, and activities on behalf of the union and from threatening employees with discharge because of their support for the union is enforced.

Accordingly,

IT IS ORDERED that the Board's order is enforced in part and enforcement is denied in part.